MAX N. TOBIAS, JR., Judge.
_JjThe plaintiff/appellant, Rain CII Carbon LLC (“Rain”), has appealed the judgment of the trial court that granted a dilatory exception of prematurity in favor of the defendants/appellees, ConocoPhillips Company, M.E. Zukerman Calcined Coke Corporation, and M.E. Zukerman Energy Investors Inc. (“Zuekerman”) (“hereinafter collectively referred to as “COP” or “defendants”).[1]
*759 COP and Rain’s predecessor, CII Carbon, L.L.C., entered into a “Purchase Agreement” dated May 25, 2005 (the “agreement”). Pursuant to the agreement, COP sold Rain’s predecessor COP’s 50% membership interest in Venture Coke Company L.L.C. (“Venco”). As a result of the Agreement and a virtually identical agreement with Zukerman, Rain became the owner of a calcining plant in Mounds-ville, West Virginia. The agreement contained an arbitration clause that reads as follows:
Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration 12Association under its Commercial Arbitration Rules in effect at the time such arbitration is commenced, and judgment on the Award rendered by the arbitration may be entered in any court having jurisdiction thereof. The arbitration shall be conducted by one arbitrator. The arbitrator shall render his or her written award no later than 90 days following the conclusion of the arbitration hearing.
According to Rain’s original petition, in October 2009, approximately four years after Rain and COP entered into the Agreement, a group of West Virginia citizens filed suit against Rain for damages alleg-
edly resulting from pollution at the Moundsville plant. Some of those damages purportedly occurred during the period when Venco owned the plant. In July 2010, two other West Virginia citizens filed a suit asserting identical allegations against Rain and others.. Because of the underlying actions, Rain CII retained counsel and incut red legal fees and other litigation expenses, and responded to the underlying actions, denying any liability for the allegations and denying that the plaintiffs therein sustained any damages.[2]
The complaints in the underlying actions assert various causes of action arising from the operation of the Moundsville Plant from 1971 to the present, | including negligence, intentional and negligent infliction of emotional distress, private nuisance, trespass, fraud, and misrepresentation.
Rain alleges that its predecessor, CII, acquired the plant in 2005 and that one or both of the defendants had ownership interest in the plant from 1990 to 2005. Thus, it argues that the plaintiffs in the underlying actions claim damages allegedly stemming from the intentional or negligent emissions of pollutants from the Moundsville plant during the period that COP owned that plant.
Rain filed the instant lawsuit against the defendants asserting several causes of action including breach of contract, negligent *760 misrepresentation, unfair trade practices, indemnification, and declaratory judgment regarding the indemnification provisions of the agreement. Thereafter, Rain filed a first supplemental and amending petition.
The defendants filed dilatory exceptions of prematurity, citing the arbitration provision and asserting that the claims brought by Rain fall under the scope of the arbitration agreement and are, thus, premature. Rain opposed the motion, arguing that its tort claims fall outside the scope of the arbitration provision and that the defendants failed to prove that the provisions are valid and enforceable.
The district court heard the exceptions on 25 February 2011. Just days before the hearing, Rain filed a second supplemental and amending petition, in which it alleged for the first time, that it was fraudulently induced to enter into the arbitration clause itself.
|4On 4 March 2011, the court sustained the exceptions, enforcing the arbitration provision between the parties, and dismissed Rain’s petitions without prejudice. Rain filed both an application for supervisory writs and a motion for suspensive appeal.
On 1 July 2011, a panel of this court denied the writ application. The panel also stated that it found no error in the trial court ruling granting the exceptions of prematurity and dismissing Rain’s petitions without prejudice.
In this appeal, Rain has assigned three errors for review. First, Rain argues that the district court committed legal error when it failed to conduct an in limine trial to determine if the defendants proved that the parties agreed to arbitrate the claims brought by Rain. Second, Rain alleges that no valid arbitration agreement exists. Finally, Rain contends that its claims do not fall within the scope of the arbitration provision in the agreement.
Before we address Rain’s assignments of error, the defendants argue that our prior decision denying the writ application should be considered “law of the case.”[3] Under those circumstances, the defendant contend, we should apply the previous ruling issued on the writ application and affirm the trial court. We disagree. The “law of the case” doctrine is well-settled; when it is applied and the reasons for it were explained in State v. McElveen, 10-0172, p. 13 n. 8 (La.App. 4 Cir. 9/28/11), 73 So.3d 1033, 1054:
The “law of the case” doctrine applies to all prior rulings or decisions of an appellate court or the Supreme |5Court in the same case, not merely those arising from the full appeal process. See Pumphrey v. City of New Orleans, 05-0979 (La.4/4/06), 925 So.2d 1202. This policy applies to parties who were parties to the case when the former decision was rendered and who thus had their day in court. The reasons for the “law of the case” doctrine is to avoid relitigation of the same issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. Day v. Campbell-Grosjean Roofing and Sheet Metal Corp., 260 La. 325, 256 So.2d 105 (1971). This doctrine is not an inflexible law; thus appellate courts are not absolutely bound thereby and may exercise discretion in application of the doctrine. It should not be applied where it would accomplish an obvious injustice or where the former appellate decision was manifestly erroneous.
*761 In the instant case, however, this court declined to exercise its supervisory jurisdiction. This issue was addressed in by the Supreme Court in Davis v. Jazz Casino Co., L.L.C., 03-0276 (La.6/6/03), 849 So.2d 497, wherein the trial court certified a class and the defendant filed an application for supervisory writs as well as a suspensive appeal. The court of appeal denied relator’s application for supervisory writs, stating:
On the showing made, we find no error in the trial court’s judgment. Furthermore, relator has a remedy on appeal.
Thereafter, a separate panel of the court of appeal dismissed relator’s appeal, finding “the issue raised in this appeal was previously addressed by this Court in a writ application.” After reviewing both rulings, the Supreme Court stated:
The court of appeal erred in holding its earlier writ denial resolved the issue presented on appeal. In Bulot v. Intracoastal Tubular Services, Inc., 02-1035 (La.6/14/02), 817 So.2d 1149, we held that once a court of appeal declines to exercise its supervisory jurisdiction by denying the writ, the court was without jurisdiction to affirm, reverse or modify the judgment of the trial court. Thus, any language in the court of appeal’s earlier writ | ^denial purporting to find no error in the trial court’s certification ruling is without effect.
Id. at p. 1, 849 So.2d at 498.
Therefore, we decline to apply the law of the case doctrine finding that it has no bearing on the proceedings before us.
A determination regarding whether to stay or to compel arbitration is a question of law. Saavedra v. Dealmaker Developments, LLC, 08-1239, p. 6 (La.App. 4 Cir. 3/18/09), 8 So.3d 758, 762, unit denied, 09-0875 (La.6/5/09), 9 So.3d 871 (citing Billieson v. City of New Orleans, 02-1993, p. 3 (La.App. 4 Cir. 9/17/03), 863 So.2d 557, 560). Accordingly, an appellate court reviews questions of law to determine whether the trial court was legally correct or incorrect. Id. Specifically, an appellate court “should consider de novo issues of law concerning whether the dispute was within the scope of the arbitration agreement, unless the parties also clearly agreed that the issue of whether a dispute was arbitrable was subject to arbitration.” Collins v. Prudential Ins. Co. of Am., 99-1423, p. 7 n. 11 (La.1/19/00), 752 So.2d 825, 830; see also Hoffman, Siegel, Seydel, Bienvenu & Centola, APLC v. Lee, 05-1491, pp. 4-5 (La.App. 4 Cir. 7/12/06), 936 So.2d 853, 856, writ denied, 06-1995 (La.11/3/06), 940 So.2d 671 (recognizing that “[i]f the trial court’s decision was based on an erroneous interpretation or application of law, rather than a valid exercise of discretion, such [an] incorrect decision is not entitled to deference by the reviewing court”) (quoting Dufrene v. HBOS Mfg., LP, 03-2201, p. 2 (La.App. 4 Cir. 4/7/04), 872 So.2d 1206, 1209).
The parties agree that the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., (“FAA”), provides the governing substantive law in this case. The FAA applies to all arbitration agreements in contracts involving interstate commerce. 9 U.S.C. § 2; see also Aguillard v. Auction Mgmt. Corp., 04-2804 (La.6/29/05), 908 So.2d 1.
In its first assignment of error, Rain asserts that the trial court was required to conduct an in limine trial before granting the exception of prematurity. A dilatory exception pleading prematurity, La. C.C.P. art. 926(1), is determined on the basis of the showing made at the in limine trial of the exception, including evidence introduced at the trial thereof. La. C.C.P. arts. 929, 930. Moreno v. Entergy Corp. *762 10-2281, p. 5 (La.2/18/11), 62 So.3d 704, 707 (Victory, J., concurring).
In response to this argument, the defendants contend that an in limine trial took place and the court had all the necessary evidence before it to sustain the exception. Therefore, we must determine if an in limine trial was conducted by the court below before rendering its decision.
We have reviewed the transcript of the hearing that took place on 25 February 2011. All the documentary evidence relating to the exception was offered and filed into evidence by Rain without objection. This evidence included the exception of prematurity to which was attached the purchase agreement containing the arbitration clause at issue. Also filed into evidence were the petitions filed by Rain. Counsel for Rain stated:
Additionally, the movers, Zuckerman and Conoco, reference in their exception of prematurity that they did not intend to call testimony, to bring testimony, in regards to the exception today. In fact, as we had just learned today, they have not offered any testimony today.
Rain, likewise, did not offer any live testimony. COP listed only the purchase agreement on its exhibit list, which was already in evidence. As Rain states, COP did not offer any evidence.
|sAs the exceptor, COP had to prove that the dispute with Rain falls within the scope of the arbitration provision. We find that it did so through the purchase agreement and petitions filed into evidence by Rain. It is doubtful that live testimony would have benefited the trial court. The burden then shifted to Rain to show that its claims fell outside the arbitration clause. It put on no evidence through live testimony or otherwise, except to rely on the allegations of its petitions.
Rain argued to the trial court that COP’s failure to introduce evidence falls under the holdings of the Supreme Court in LaCoste v. Pendleton Methodist Hosp., L.L.C., 07-0008, pp. 8-9 (La.9/5/07), 966 So.2d 519, 525, wherein the Court stated:
In the instant case, the defendant hospital, which has the burden of proof as the exceptor, has chosen to rely on the allegations as set forth in the plaintiffs’ original and first supplemental and amending petitions, because the defendant put on no other evidence at the trial. Where no evidence is presented at trial of a dilatory exception, like prematurity, the court must render its decision on the exception based upon the facts as alleged in the petition, and all allegations therein must be accepted as true. Blakely v. Powers, 590 So.2d 1286, 1290 (La.App. 1st Cir.1991). Accordingly, we now apply the Coleman [v. Deno, pp. 17-18, (La.1/25/02), 813 So.2d 303, at 315-316] factors to the allegations asserted in the plaintiffs’ petition, as amended, which we accept as true for the purpose of resolving this dispute. Upon doing so, we conclude that the claims as asserted in the plaintiffs’ petition, as amended, do not fall within the purview of the LMMA [Louisiana Medical Malpractice Act], and thus the district court properly denied the defendant’s exception of prematurity.
In the instant case, COP relied on the purchase agreement that contained the arbitration clause; it did not, as in LaCoste, rely solely on the allegations contained Rain’s petitions. Consequently, because we find that the pronouncements of | JbaCoste do not apply to the case sub judice, the trial court was not required to accept all of Rain’s allegations as true.
Rain also contends that the trial court erred by granting the exception of prematurity because it alleged fraudulent *763 inducement with regard to the arbitration clause in its second supplemental and amending petition filed nine days before the hearing.[4] In Saavedra v. Dealmaker Developments, LLC, 08-1239, p. 9 (La.App. 4 Cir. 3/18/09), 8 So.3d 758, 762, 764-65 writ denied, 09-0875 (La.6/5/09), 9 So.3d 871, we stated:
It is now well-settled that as a matter of substantive federal law applicable also to the states: (i) an arbitration clause is severable from the remainder of the contract, and (ii) unless the challenge is to the arbitration clause itself, the issue of the contract’s validity is decided by the arbitrator. Applying these principles to the instant ease, which is governed by the FAA, we note that Mr. Saavedra’s fraud claim is directed to the purchase agreement as a whole; he is not attacking the arbitration provision itself. We thus find that Mr. Saavedra’s claims, including the claim of fraud in the inducement, must be arbitrated.
In Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), the Court declared:
[I]f the claim is fraud in the inducement of the arbitration clause itself — an issue which goes to the “making” of the agreement to arbitrate — the federal court may proceed to adjudicate it. But the statutory language [of the Arbitration Act] does not permit the federal court to consider claims of fraud in the inducement of the contract generally. [Emphasis supplied.]
We note that the word used is “may” not “must” or “shall.” This seems to indicate that the trial court has the discretion to choose to try that portion of the petition.
| min any event, we have reviewed Rain’s allegation of fraud in the inducement of the contract in general and those of the arbitration clause itself. We note two things. First, the allegations of fraud are substantially identical.[5] In addition, the allegations of fraud are all contingent upon the outcomes of the underlying actions. Thus, the trial court would be unable to try Rain’s claims of fraud in the inducement of the arbitration clause itself in order to make a determination of whether to compel arbitration. Consequently, we see no purpose in remanding the case to the trial court for a trial on that issue. Further, the two issues are so intertwined, that to try the allegations of fraud with respect to the arbitration clause would be to try the allegations of fraud with respect to the agreement as a whole. And the case law is clear: all issues regarding the contract as a whole must be referred to arbitration.
Finally, we are called upon to examine the arbitration clause itself to determine whether the trial court was correct in finding that Rain’s tort claims fall under the arbitration clause itself. The arbitration provision states:
Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules in effect at the time such arbitration is commenced, and judgment on the Award rendered by the arbitration may be entered in any court having jurisdiction *764 thereof. The arbitration shall be conducted by one arbitrator. The arbitrator shall render his or her written award no later than 90 days following the conclusion of the arbitration hearing. [Emphasis supplied.]
The jurisprudence has referred to this type of provision as “broad:”
Both the Supreme Court and this court have characterized similar arbitration clauses as broad arbitration clauses capable of expansive reach. See Prima Paint Corp., v. Flood & Conklin Mfg. Co., 388 U.S. 395, 397-98, 87 S.Ct. 1801, 1802-03, 18 L.Ed.2d 1270 (1967) (label-ling as “broad” a clause requiring arbitration of “[a]ny controversy or claim arising out of or relating to this Agreement”); Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc., 138 F.3d 160, 164-65 (5th Cir.1998) (holding that when parties agree to an arbitration clause governing “[a]ny dispute ... arising out of or in connection with or relating to this Agreement,” they “intend the clause to reach all aspects of the relationship.”).
Pennzoil Exploration & Prod. Co., v. Ramco Energy, Ltd., 139 F.3d 1061, 1067 (5th Cir.1998).
We find similar language in the arbitration provision at issue in this case. Therefore, we find that all of Rain’s allegations fall within the scope of that arbitration provision and find no error in the judgment of the trial court, granting the exception of prematurity, dismissing the action without prejudice, and sending the matter to arbitration. Accordingly, we affirm the judgment of the trial court.

AFFIRMED.

BONIN, J., concurs in the result.

. M.E. Zukerman Calcined Coke Corporation and M.E. Zukerman Energy Investors Inc. have joined in the brief filed by COP and adopts by reference the arguments made by COP. Therefore, the court refers to COP alone with the understanding that COP⅛ arguments encompass those of its co-defendants.

. That action is styled Ernie Lee Anderson, et al. v. Columbian Chemicals Co. et al., No. 09-C-220K, currently pending in the Circuit Court of Marshall County, West Virginia ("Anderson I”). In July 2010, Dennis F. Moore and Jolene Moore, also West Virginia citizens, brought suit stating identical allegations to those set forth in Anderson I. That action is styled Dennis F. Moore & Jolene Moore v. Columbian Chemicals Co. et al., Civil Action No. 10-C-146K, also pending in the Circuit Court of Marshall County; Moore was subsequently consolidated into Anderson I, which complaint was amended.
On 6 September 2011, following the issuance of the district court’s judgment challenged in this appeal, two additional civil actions styled Brian Anderson, et al. v. Columbian Chemicals Company, et al., No. 11-C-152H ("Anderson II ”) and Amanda Anderson, et al. v. Rain CII Carbon LLC, et al., No. 11-C-153K ("Anderson III ”) were allegedly filed in the Circuit Court of Marshall County, West Virginia stating similar allegations against Rain CII to those set forth in the Anderson litigation. Anderson I, Anderson II, and Anderson III actions (collectively, "underlying actions”) are currently pending in the Circuit Court of Marshall County, West Virginia.

. It is true that Rain’s writ application and appellant brief are remarkably similar.

. Rain previously alleged fraudulent inducement and misrepresentation with regard to the contract as a whole.

. At the hearing on this matter, the trial court had certain thoughts about the timing of Rain’s filing of its second supplemental and amending petition:
That’s what I was thinking. It’s a good way of getting out of arbitration even though you know you have to.
I'm going to grant your exception.