LOVE, J.,
concurs in part and dissents in part.
U respectfully concur in part and dissent in part. I agree with the majority in so far as it consolidates the appeal with the writ application and dismisses the appeal. Additionally, I agree with the majority’s finding that the trial court did not abuse its discretion in denying Pilot’s motion to dismiss for forum non conveniens. I disagree, however, with the majority’s denial of Pilot’s writ application seeking review of the trial court’s denial of its exception of prematurity and its motion to stay pending arbitration. I also disagree with the majority’s decision to remand the matter for an evidentiary hearing on Star’s motion in limine.
I write separately to express my views as it relates to the promissory note (“Note”) and allegations of fraud in light of our holdings in Saavedra v. Dealmaker Developments, LLC, 08-1239 (La.App. 4 Cir. 3/18/09), 8 So.3d 758, and Rain CII Carbon LLC v. ConocoPhilips Co., 12-0203 (La.App. 4 Cir. 10/24/12), 105 So.3d 757.
I begin by addressing the relevant facts in this case, as my review of the record differs from that of the majority. Star’s petition states that the parties entered an agreement for the purchase of fuel to begin in 2005. The Direct Bill Agreement executed on November 4, 2004, has at all times reflected the billing and payment arrangements between the parties. Star alleged that throughout their business relationship Pilot agreed to provide fuel at discounted rates. In January |22009, the parties entered into an agreement which set out the pricing structure for fuel purchases, which was memorialized in a letter from Pilot’s vice president. The petition further states that the “pricing structure agreement was confirmed ... in statements to Star employees and in writing.” Notably, nowhere in Star’s petition does it make the distinction between the oral and written agreements that established the contractual relationship between the parties.
Subsequent to the parties agreeing to a pricing structure, Star fell behind in its payments to Pilot. To account for Star’s debt, Star executed the Note which was signed by Star’s president and notarized on April 9, 2012. The Note, which Pilot attached as an exhibit to its exception, makes express reference to the Direct Bill Agreement and includes a plainly marked arbitration provision. Pilot argued at the hearing that the Note served as “an amendment or modification” to the Direct Bill Agreement. The executed Note reflected a modification to the existing agreement to account for any future default in payment on the part of Star and served as an “accounting exercise” for the debt Star had already accrued during the course of its contractual relationship and dealings with Pilot. Although the Note is signed and notarized, establishing Star’s knowledge of its existence, Star’s petition does not reference the Note.
Star alleges in its petition that Pilot committed fraud by overcharging and wrongfully withholding rebates owed for fuel purchases. Star attaches as proof an affidavit filed in support of a search warrant as part of the FBI’s investigation of fraudulent conduct relating to Pilot’s discounted rates program. In its opposition to Pilot’s exception, Star attached as sup *1203 porting evidence the same affidavit in support of the FBI search warrant, a former Pilot employee’s plea agreement, evidence of the class action lawsuit and settlement, and the criminal enforcement ^agreement.[1] In its separately filed motion in limine, Star attached the criminal enforcement agreement.
Motion in Limine
I disagree with the majority’s finding that the trial court abused its discretion when it granted Star’s motion in limine without an evidentiary hearing or taking evidence on Star’s motion. The record indicates that the trial court had before it the exceptions and motions filed by both parties, including their attached exhibits, when it heard arguments from counsel on both sides. Similarly, evidence was presented and accepted at the hearing. Pilot offered in support of its exception of prematurity and motion to stay pending arbitration, Star’s petition, the Direct Bill Agreement, and the Note.[2] As outlined above, Star offered documentary evidence in opposition to Pilot’s exception of prematurity and in support of its motion in limine, including evidence that Pilot engaged in misconduct adversely affecting its customers. Moreover, neither party has assigned as error the trial court’s failure to consider or accept evidence.
Further, because the Note represents sums allegedly owed Pilot, any dispute over amounts owed will necessarily take into account the Note. Thus, as a practical matter, whether the issues are before the arbitrator or the trial court, I find the Note relevant. Therefore, I do not find the record supports the majority’s view that the trial court failed to accept evidence on the pleadings.
In this case, any consideration of Pilot’s exception of prematurity and Star’s allegations of fraudulent inducement of the arbitration clause requires consideration of the Note. As my analysis will explain in greater detail, I find merit to Pilot’s exception; and consequently, I find the Note relevant and should not be | ¿excluded from evidence. Accordingly, I find the trial court abused its discretion by granting Star’s motion in limine.
Exception of Prematurity
Whether to stay or compel arbitration is a question of law. Saavedra, 08-1239, p. 6, 8 So.3d 758, 761. Therefore, an appellate court reviews questions of law to determine whether the trial court was legally correct or incorrect. Id. This Court “ ‘should considér de novo issues of law concerning whether the -dispute was within the scope of the arbitration agreement, unless the parties also clearly agreed the issue of whether a dispute was arbitrable was subject to arbitration.’ ” Id. (quoting Collins v. Prudential Ins. Co. of Am., 99-1423, p. 7 n. 11 (La.1/19/00), 752 So.2d 825, 830); See also Hoffman, Siegel, Seydel, Bienvenu & Centola, APLC v. Lee, 05-1491, p. 4-5 (La.App. 4 Cir. 7/12/06), 936 So.2d 853, 856 (recognizing that “ ‘[i]f the trial court’s decision was based on an erroneous interpretation or application of law, rather than a valid exercise of discretion, such [an] incorrect decision is not entitled *1204 to deference by the reviewing court’ ”) (quoting Dufrene v. HBOS Mfg., LP, 03-2201, p. 2 (La.App. 4 Cir. 4/7/04), 872 So.2d 1206, 1209).
The trial court did not offer a basis for its ruling at the hearing, nor did the trial court offer written reasons. Consequently, this Court need only determine from a review of the record whether the trial court was legally correct or incorrect.
In this case, Pilot filed an exception of prematurity and a motion to stay proceedings pending arbitration. “The party pleading the exception of prematurity has the initial burden of showing the existence of a valid contract to arbitrate.” Saave-dra, 08-1239, p. 6, 8 So.3d at 762 (emphasis added). The exceptor must also “prove that the dispute falls within the scope of the arbitration provision.” Rain, 12-0203, p. 8, 105 So.3d at 762. However, the burden of proof does not always remain with the party pleading the exception as the burden shifts to the party opposing the exception “to show its claims [fall] outside the arbitration clause.” Id.
|SI find this Court’s previous holdings in Saavedra and Rain controlling in our review of the trial court’s denial of Pilot’s exception of prematurity and motion to stay pending arbitration. To support its exception of prematurity and motion to stay, Pilot offered the Direct Bill Agreement, the Note incorporating by specific reference the Direct Bill Agreement, and Star’s petition. The majority concludes that the Note is a completely separate agreement from Pilot’s agreement to sell fuel to Star because it was executed in a separate document years after the parties began their contractual relationship. I disagree.
We have previously recognized that jurisprudence “allow[s] an arbitration agreement to apply if ‘an arbitration clause is incorporated by reference to another written contract.’ ” Dufrene, 03-2201, p. 5-6, 872 So.2d at 1211(quoting Woodson Const. Co. v. R.L. Abshire Const. Co., 459 So.2d 566, 569 (La.App. 3rd Cir.1984)). The Note incorporates by specific reference the Direct Bill Agreement, which memorialized the contractual agreement between the parties for the purchase and sale of fuel through Pilot’s discounted rates program. Furthermore, the record shows that Star’s president signed and notarized the Note evidencing Star’s awareness of its existence and the arbitration provision. Id., 03-2201, p. 8, 872 So.2d at 1213 (recognizing that a “party who signs a written instrument is presumed to know its contents”).
The fact that the Note was signed after the contractual relationship began is of no moment. The parties have shown a pattern of entering oral and written agreements since their contractual relationship began in 2005. Particularly, Star relies on this type of post-original agreement in its petition to support its claim that it entered an agreement with Pilot in January 2009, outlining the discounted pricing structure. However, Star also alleges in its petition that Pilot always agreed to sell fuel to Star at discounted rates. Thus, Star suggests that the 2009 “agreement” modified the parties’ contractual relationship established in November 2004 in the | f;Direct Bill Agreement. In the same way that Star relies on the 2009 pricing structure agreement to establish its breach of contract claims, Pilot relies on the Note to establish Star’s agreement to arbitration of any claims arising from or relating to their contractual relationship. Consequently, I disagree with the majority’s finding that the Note is a completely separate agreement. Thus, as a matter of law, I find a *1205 valid arbitration agreement existed between the parties.
The arbitration provision at issue here can only be characterized as broad. The arbitration provision at issue covers “any claim or controversy between the parties, whether arising in contract or tort or by statute, including but not limited to, claims resulting from or relating to this agreement” as well as “any dispute [concerning] whether a claim is arbitrable.” All of Star’s allegations fall within the scope of the arbitration provision. In Pennzoil Exploration & Prod. Co. v. Rameo Energy, Ltd., 139 F.3d 1061, 1067 (5th Cir.1998), it was recognized that when parties agree to an arbitration clause governing “[a]ny dispute ... arising out of or in connection with or relating to this Agreement,” they “intend the clause to reach all aspects of the relationship.”[3] Id. (quoting Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc., 138 F.3d 160, 164-65 (5th Cir.1998)). I find the same holds true in this case.
Further, it is without question that the parties involved are sophisticated businesses. Therefore, both parties were more than capable of protecting themselves in negotiations that involve a binding arbitration agreement in a multi-mil-lion dollar deal. In that the Note is a modification of Pilot and Star’s contractual relationship, I find the parties intended the arbitration provision to reach all aspects of the relationship. Thus, Pilot met its initial burden as the party pleading the exception as set forth in Saavedra and Rain.
^Consequently, the burden shifts to Star to prove that its claims, fall outside the scope of the arbitration provision. First, Star avers that its claims arise out of a separate agreement with no connection to the Note. For the reasons outlined above, I find no merit to this argument.
Second, in its motion in limine, Star claimed that the Note in its entirety was induced by fraud and was void ab initio. However, counsel for Star argued at the hearing that its fraudulent inducement claim and the evidence it offered in support is directed to the arbitration provision itself; and therefore, the making of the agreement to arbitrate may proceed in the trial court. Star’s counsel offered into evidence several documents to “show the Court that substantial allegations have been made regarding fraud.” Counsel for Star stated that the evidence was offered to assist the trial court in determining “whether or not [he] made an attack on the arbitration clause.”
This Court has recognized that an arbitration provision is “severable from the remainder of the contract, and ... unless the challenge is to the arbitration clause itself, the issue of the contract’s validity is decided by the arbitrator.” Rain, 12-0203, p. 9,105 So.3d at 763 (quoting Saavedra, 08-1239, p. 9, 8 So.3d at 764).
Because Star makes allegations of fraudulent inducement of the arbitration clause itself, this Court must first consider the allegations made in Star’s petition. In Long v. Jeb Breithaupt Design Build Inc., 44,002, p. 14 (La.App. 2 Cir. 2/25/09), 4 So.3d 930, 939, the court stated that “one of the primary concerns of courts is that a party seeking to avoid arbitration will simply allege fraudulent inducement in order *1206 to get the case into the district court. For this reason, allegations of fraud in a petition are closely scrutinized by the court.” Additionally, La. C.C.P. art. 856 requires that “[i]n pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity.”
|8In French’s Welding & Maintenance Serv., L.L.C. v. Harris Builders, L.L.C., et al, 10-0089 (La.App. 4 Cir. 8/11/10), 45 So.3d 1148, plaintiff sought a preliminary injunction prohibiting arbitration of the parties’ disputes claiming the arbitration clause was unenforceable because defendant never signed the contract containing the arbitration provision and defendant misrepresented the necessity of the arbitration provision’s inclusion. Id., 10-0089, p. 2, 45 So.3d 1148, 1149. During negotiations, plaintiffs attorney advised his client that the arbitration clause should be deleted. Id., 10-0089, p. 1, 45 So.3d 1148, 1149. However, defendant insisted that the arbitration clause was required under state law and could not be deleted. Id. In light of defendant’s representation of the law, plaintiff signed the contract. Id. Only in preparation for arbitration, did plaintiff learn that the state removed the arbitration clause from the contract and that defendant had not executed the contract. Id. Based on the evidence presented, this Court affirmed the trial court’s finding that plaintiff was misled and coerced into agreeing to arbitration because defendant falsely claimed that arbitration was required under the contract. Id.
I find that in pleading fraud Star alleged with particularity that Pilot engaged in “misconduct” relative to its discounted rates program. Specifically, Star offered sufficient evidence to support its claim that Pilot’s misconduct involved overcharging and withholding rebates from its customers. However, these allegations of fraud speak to the “agreement” between Pilot and Star in general. Whether the facts and circumstances alleged and evidence submitted supports the claim of fraudulent inducement of the arbitration provision is an entirely separate inquiry.
Star’s petition makes no mention of the Note or the arbitration provision. Nor does the petition make a specific allegation of fraudulent inducement of the arbitration provision itself. The petition states that Pilot “intentionally engaged in |flfraudulent conduct to artificially inflate the costs basis and conceal the actual value of the rebate due Star with the intentional purpose of breaching Pilot’s contract with Star.” Star also directs the court to the attached copy of the affidavit filed in support of the FBI investigation for specific facts regarding Pilot’s fraudulent conduct. However, the affidavit makes no mention of Star, the Note, or the arbitration clause.
In contrast to its allegations of fraud of the “agreement,” Star’s allegations of fraudulent inducement of the arbitration provision are conclusory allegations. Star alleges that because of Pilot’s fraudulent misconduct and a desire to protect itself against future claims, Pilot used Star’s indebtedness to coerce Star into agreeing to arbitration. Nevertheless, Star only points to facts and circumstances that Pilot engaged in misconduct relating to the discounted rates program in general.
Additionally, the fact Pilot entered into a criminal enforcement agreement for conduct relating to its rebate program does not by itself support the allegation that Pilot constructed a plan to coerce Star into agreeing to arbitration. Thus, the facts and circumstances presented at the hearing, in the petition, and in the motion in limine do not address Star’s claim that it *1207 was deceived into agreeing to arbitration. Star merely suggests a hypothetical scenario to suggest possible misconduct relative to the Note. Unlike the plaintiff in French’s Welding, Star failed to plead with particularity its allegations of fraud of the arbitration provision as required under La. C.C.P. art. 856.
The majority also finds that the allegations of fraud of the arbitration provision and those of the agreement are not “so factually intertwined,”' that the matter must be referred to arbitration. Unlike this Court’s comparative analysis in Rain, the majority does not establish how the allegations of fraud are factually distinct. Instead, it considers whether the Note and the “agreement sued upon” are separate distinguishable agreements.
11f)Applying the principles set forth in Saavedra, this Court is called to examine the allegations of fraud of the arbitration provision itself and those of the “agreement sued upon.” A review of the record demonstrates that “the allegations of fraud are substantially identical.” Rain, 12-0203, p. 10, 105 So.3d at 763 (emphasis added). The allegations of fraudulent inducement of the arbitration provision and the allegations of fraud as to the validity of the parties’ agreement arise out of the same set of facts and circumstances. Star even used the same evidence in support of its allegations of fraud of the “agreement sued upon” to attack the arbitration provision.
Outside of relying on evidence of Pilot’s general misconduct, Star fails to plead independent facts or circumstances specific to Pilot’s allegedly coercive actions to procure Star’s agreement to arbitration. Consequently, Star’s allegations of fraudulent inducement of the arbitration provision are simply conclusory allegations that cannot stand on their own.[4] Therefore, Star’s fraud claims do not attack the arbitration provision itself and only challenge the agreement as a whole.
Finally, jurisprudence is clear that arbitration is favored. Aguillard v. Auction Mgmt. Corp., 04-2804, p. 6-8 (La.6/29/05), 908 So.2d 1, 7-8. Thus, “any doubt concerning the scope of which disputes are arbitrable should be resolved in favor of arbitration.” Saavedra, 08-1239, p. 7, 8 So.3d at 763 (citing Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Based on my de novo review, the issue of whether the parties’ agreement is invalid because it was induced by fraud must be referred to arbitration. Therefore, I find the trial court erred in denying Pilot’s exception of prematurity and motion to stay pending arbitration.
For the foregoing reasons, I agree with the majority’s ruling in so far as it consolidates the appeal with the writ application and dismisses the appeal in Inaddition to affirming the trial court’s denial of Pilot’s motion to dismiss for forum non conve-niens. However, I - would grant Pilot’s writ application reversing: (1) the trial court’s denial of the exception of prematurity and motion to stay pending arbitration; and (2) the trial court’s granting of Star’s motion in limine. Accordingly, I concur in part and dissent in part.
TOBIAS, J., dissents in part, concurs in part, and assigns reasons.
|,I respectfully dissent in part and concur in part. Like the first time this case *1208 came before this court on these same issues where I agreed with Judge Love’s partial dissent relating to arbitration and added my further analysis to the mix, I now agree with her well-articulated and well-reasoned dissent on the arbitration issue. I further dissent on the forum non conveniens issue.
I.
I find that the arbitration clause is enforceable regardless of whether Star Transport, Inc. (“Star”) alleges fraud in connection with the promissory note for $14,371,133.49 for fuel (subject to certain minimal credits for payments made by Star since the promissory note’s execution).[1] The promissory note, which was executed by Star and notarized with a jurat in Illinois, contains the agreement to arbitrate at issue herein. The precise language in the note, set forth in all in capital letters therein, reads:
ANY CLAIM OR CONTROVERSY (“CLAIM”) BETWEEN THE PARTIES, WHETHER ARISING IN | .CONTRACT OR TORT OR BY STATUTE, INCLUDING BUT NOT LIMITED TO, CLAIMS RESULTING FROM OR RELATING TO THIS AGREEMENT SHALL, UPON THE REQUEST OF EITHER PARTY, BE RESOLVED BY BINDING ARBITRATION IN ACCORDANCE WITH THE FEDERAL ARBITRATION ACT.... ANY DISPUTE CONCERNING WHETHER A CLAIM IS ABITRATA-BLE [sic] OR BARRED BY THE STATUTE OF LIMITATIONS SHALL BE DETERMINED BY THE ABRI-TRATOR. [Boldface and underlining added for emphasis.]
As stated by the Louisiana Supreme Court on multiple occasions (and I believe they mean what they say), arbitration is favored in Louisiana. Hodges v. Reasonover, 12-0043, p. 4 (La.7/2/12), 103 So.3d 1069, 1072; Mortal v. BPI Home Builder, LLC, 12-2195, 12-2238, p. 1 (La.11/2/12), 99 So.3d 1006; Aguillard v. Auction Management Corp., 04-2804, p. 7 (La.6/29/05), 908 So.2d 1, 7. As La. R.S. 9:4201 states:
A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitratiqn any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
Under Louisiana law, fraud (La.C.C. art. 1953) is a tort with a one-year prescriptive period to which the doctrine of contra non valentem non currit praescriptio may be applicable. State ex rel. Louisiana Dept. of Education-Food Service v. Bright Beginnings Child Care, Inc., 42,146, p. 6 (La.App. 2 Cir. 5/16/07), 957 So.2d 362, 366, citing Bell v. Demax Management Inc., 01-0692 (La.App. 4 Cir. 7/24/02), 824 So.2d 490, Cole v. Celotex Corp., 620 So.2d 1154 (La.1993), and La. C.C. art. 3492; Chateau Homes by RJM, Inc. v. Aucoin, 11-1118, 11-1119, p. 13 (La.App. 5 Cir. 5/31/12), 97 So.3d 398, 404.
*1209 |sThe promissory note (a contract) calls for the payment of a liquidated sum of money, here $14,377,133.49, and for the arbitration of a claim in tort related thereto. Such language stands out like the proverbial “sore thumb.” Certainly, any reasonably sophisticated party, as both Star, on the one hand, and Pilot Corporation and Pilot Travel Centers LLC’s (collectively hereafter, “Pilot”), on the other hand, are, would question what type of tort could arise out a promissory note. The only obvious torts I can think of are an allegation of fraud and tortious interference with contract. Here, it is reasonably certain that the parties intended for all claims, regardless of source or nature and related to the promissory note, to be arbitrated in all respects, including whether the claim was subject to arbitration or not. Regardless, whether Star was told by Pilot about the federal investigation questioning their business practices, they knew during negotiations leading up to the execution of the note that they still owed millions of dollars for the purchase of fuel.[2] Under any scenario, the parties clearly wanted to arbitrate any disputes.
Further, I find nothing in either Saavedra v. Dealmaker Developments, LLC, 08-1239 (La.App. 4 Cir. 3/18/09), 8 So.3d 758, or Rain CII Carbon LLC v. ConocoPhillips Co., 12-0203 (La.App. 4 Cir. 10/24/12), 105 So.3d 757, that warrants a finding that the present case, including the issue of fraud, should not be arbitrated. Moreover, I read Saavedra as requiring that the fraud issue in this case be arbitrated. That the arbitration agreement at issue in this case was agreed to in the promissory note signed years after the initial agreement for fuel sale/purchases is of no moment. Parties are free to contract as they see fit as long as their contract 14does not contravene public policy; no acts contravening public policy issue is present in this case. Moreover, the issue of fraud, if any, is so integrally connected to the indebtedness that it would be a waste of energy and resources to separate them. See Rain CII Carbon, supra. That is, the same evidence on fraud will be determinative of the indebtedness of Star to Pilot. Id.
Historically, fraud is a serious allegation; once made, it opens up the party alleging fraud to claims for libel and slander (both torts) if fraud is not ultimately proven. A claim of fraud is frequently resorted to when all other possible theories of why one should prevail on a claim are unknown. In other words, one might make the claim when one has nothing to lose, i.e., is approaching insolvency/ bankruptcy/receivership. It is periodically utilized to delay collection of debts. Although federal jurisprudence recognizes that when one asserts fraud (where arbitration has been agreed to by the parties in interest), such may very well make the case not subject to arbitration; such is not, *1210 however, always the ease.[3] One must view each case on its facts. Here, that Pilot entered into a criminal enforcement agreement with federal authorities does not per se prove fraud; a legitimate business reason may exist for entering into such an agreement, one of which is the cost of litigation and defense of the criminal matter.
Certainly, Pilot has a right to explain its actions, and that can be done fully in arbitration in lieu of in court. See Osborn v. Ergon Marine & Industrial Supply, Inc., 12-0183 (La.4/13/12), 85 So.3d 687.
In any event, in the case at bar, the trial court was manifestly erroneous and abused its discretion in overturning the arbitration agreement, making a factual determination without testimonial evidence save the written pleadings, memoranda | Bof counsel, and attachments thereto; that is, no evidence save attachments to pleadings and memoranda was “heard” by the trial court.
I note the absence of counsel suggesting that a full evidentiary hearing is or was necessary with testimonial evidence. Apparently, both Star and Pilot were satisfied with the record such as it existed in the trial court and no further evidence was warranted. A remand for such a hearing causes needless delay and expense, will result in substantial discovery on what and when Pilot knew or should have known about the federal investigation into their business practices on the date that the promissory note was executed, and whether, in the course of a business relationship between multi-million dollar companies, Pilot had a duty to disclose fully details of any investigation to Star before Star signed the note. That is, if Pilot knew the federal authorities were “poking around,” they had no duty to disclose anything until such time as a reasonable person would or should know that it was more likely than not that they were in trouble and potentially subject to criminal liability and such was relevant to Star’s continuing to purchase fuel from Pilot.
II.
Second, unlike my colleagues, I find merit to Pilot’s argument that the case should be dismissed for forum non conve-niens pursuant to La. C.C.P. art. 123. As the record (specifically, the plaintiffs petition) before us reflects, Star is an Illinois corporation not qualified to do business in Louisiana. Their connection to Louisiana is tenuous at best. That is, from time-to-time their motor vehicles pass through Louisiana, and they may purchase fuel[4] in this state while doing so. To me, that does not mean Star has any connection to Louisiana for purposes of a forum in Orleans Parish (where neither of the Pilot entities markets fuel or has an office) for | r,their claims against Pilot any more than one would say that I have a connection to Mississippi because I drive through that state on an infrequent basis going between New Orleans and Mobile, Alabama, and may periodically buy gasoline or a meal in Mississippi while doing so.
*1211 Additionally, although the Pilot defendants are qualified to do business in Louisiana, neither of them are Louisiana entities (corporation or limited liability company). Pilot Corporation is a Tennessee corporation with its Louisiana registered office now in Baton Rouge. Pilot Travel Centers LLC is a Delaware limited liability company with its principal business office in Knoxville, Tennessee, and its Louisiana registered office now in Baton Rouge. The claim asserted by Star relates to alleged overcharging for fuel by Pilot over several years in multiple jurisdictions.[5]
Star asserts in its brief in opposition to Pilot’s writ application that the reasons that they chose New Orleans as the venue for this suit was that (a) they thought it was a “fair and neutral forum;” (b) another victim of the “fraud” who did business in Orleans Parish filed suit in Orleans Parish to which Pilot did not object to the venue, and settled the suit; (c) Pilot did not file suit on the promissory note and did not file a reconventional demand; (d) they could not obtain a fair trial in Tennessee where Pilot is based and is the largest privately held company in that state (and seventh largest privately held corporation in the United States), employing 20,000 Tennessee residents and partially owned by the Tennessee governor; (e) evidence is in electronic form; . (f) Star “believes” [but does not know] that evidence is located throughout the United Stated; (g) Star has hired |7Harold Asher, a forensic CPA based in Orleans Parish, as an expert witness; [6] and (h) two other witnesses are located outside of Tennessee (in Iowa and Texas) who would not be inconvenienced by Louisiana as a forum. (Harold Asher is the only known witnesses in Louisiana; no known evidence is in Louisiana and whatever is here, if any, is minimal at best.) And notwithstanding those assertions in brief, Star’s counsel openly admitted in oral argument before us when questioned that he chose Louisiana as the venue because it was convenient to him; he did not allude to any of the reasons asserted in the brief La. C.C.P. art. 123 A references convenience to parties and witnesses, not the parties’ counsel.
In sum, to burden Louisiana courts with the dispute between the relators and the respondent smacks of putting an unnecessary burden on the Louisiana judicial system.
I respectfully dissent from the majority decision not to order the trial court to transfer this case to a more appropriate forum.
III.
Finally, I concur in the majority’s decision to reverse the trial court’s ruling on Star’s motion in limine to strike the promissory note from the proceedings and in dismissal of Pilot’s appeal.
Excluding the promissory note from evidence was interlocutory and would create *1212 unnecessary problems for the parties and their counsel; it would not only increase the cost of the litigation, but also ultimately results in judicial inefficiency. One must remember that only the enforcement of the provisions of the promissory note is at issue.[7]
J¿V.
Accordingly, I would grant Pilot’s motion to'dismiss for forum non conveniens and vacate the trial court’s ruling on the enforceability of the arbitration clause and striking the promissory note from evidence. If forum non conveniens is not granted, then I would send this matter to arbitration forthwith and grant the stay pending arbitration as requested by Pilot. I find no need for a further evidentiary hearing on any issue.

. At the hearing, the trial court admitted Star's evidence over Pilot’s objection on hearsay grounds, finding the evidence was not offered for the truth of the matter asserted but as supporting evidence of Star's allegations of fraud.

. The transcript reflects that Pilot's evidence was admitted over Star's objection on authenticity grounds, noting that prior to the hearing the parties filed a joint motion to supplement the record with the exhibits attesting to their authenticity.

. While this Court is not bound by the holdings in federal cases, there is considerable jurisprudence from federal courts interpreting arbitration provisions. Therefore, in this instance I find Pennzoil offers guidance.

. Star’s opportunity to present evidence to support its allegations of fraudulent inducement of the arbitration provision was at the hearing on the exception and motion in li-mine.

. This sum represents a portion of over four hundred million dollars ($400,000,000.00) of fuel purchased by Star from Pilot in the relevant period of time as alleged by Star in its petition. Star had fallen behind in the payment for fuel purchased from Pilot and executed the note in payment of its debt. That we are dealing with many millions of dollars clearly indicates that the parties have some business sophistication and acumen.

. It is the nature of businesses that they do not want the public to know about any adverse financial situation: Star would not want their customers and competitors to know that they were behind in the payment for millions of dollars for fuel (for nothing slows down debtor payments to a creditor on accounts receivable like when the .debtor knows the creditor is having financial problems) and Pilot would not want the public to know the existence of any untoward trade practices, if any. All parties would have wanted to keep such closed to the public through arbitration. I have little doubt Star would have executed the note with or without the arbitration agreement in it (or another side agreement for arbitration). Another way to look at the very broad arbitration clause is to consider that Pilot saw a “tort” coming and Star considered the "tort” language to be superfluous and not worth challenging.

. Here, because Star has alleged fraud, a federal court under the Federal Arbitration Act (9 U.S.C.A. § 1, et seq.) would automatically throw out the arbitration clause, begs the question of why Star did not file their suit in United States District Court. Star's argument rings hollow, reinforcing why forum non con-veniens should be granted in this case as discussed infra.

. Star's claims relate to a diesel fuel sales discount program with Pilot in which Star claims that it did not get the discount for which they bargained. .

. It is indeed puzzling that Star would not have filed its claim in United States District Court for Illinois, Tennessee, or Delaware. It is readily apparent that had Star filed its suit in a Louisiana federal district court, the Louisiana-based federal court would in an instance transfer the case to another federal court in a more convenient forum such as Illinois or Tennessee.

. If a plaintiff’s hiring of an expert witness to help you with its case is a rational reason to create a forum, please save me. That means that anyone could hire an expert in their local venue and bootstrap their way into creating a forum locally. Such sounds improper, even ludicrous.

. At oral argument, counsel alluded to the promissory note being attached to a recon-ventional demand by Pilot filed after the issues before us joined. However, that recon-ventional demand, if it exists, is not part of the record before us and cannot be considered.