In the absence of statutory or agreed to procedures, the arbitrator has broad discretion in conducting arbitration proceedings. Southern Tire Services v. Virtual Point Dev., 00-2301, p. 6 (La. App. 4 Cir. 9/26/01), 798 So.2d 303, 307. The appellate court's function is to determine if the arbitration proceedings have been fundamentally fair. Id.
DISCUSSION
On appeal, SPA asserts that the trial court erred in confirming the arbitration award. In granting Core's motion to dismiss, the arbitrator made two rulings: 1) he had authority to consider and rely on the GIA and Settlement Agreement in ruling on the motion to dismiss the arbitration; and 2) a settlement existed between the parties.
First, concerning the arbitrator's authority to consider the GIA and Settlement Agreement submitted by Core, the issue is whether the settlement dispute and related documents fall within the scope of the arbitration agreement. See Lakeland Anesthesia, Inc. v. United Healthcare of La., Inc. , 03-1662, p. 9 (La. App. 4 Cir. 3/17/04), 871 So.2d 380, 388 (finding arbitration should be ordered unless the arbitration clause is not susceptible of an interpretation that covers the asserted dispute).
SPA argues that the arbitrator exceeded his authority and violated its due process rights when he ruled on matters not covered in the narrow language of the arbitration demand."[2] The arbitration provision states:
*334 all claims, disputes, and other matters in question between the Contractor and the Subcontractor, arising out of , or relating to this Subcontract or the breach thereof shall be decided by arbitration ... (emphasis added).
Despite SPA's argument to the contrary, the jurisprudence has referred to similar arbitration provisions as "broad" in nature:
Both the Supreme Court and this court have characterized similar arbitration clauses as broad arbitration clauses capable of expansive reach. See Prima Paint Corp., v. Flood & Conklin Mfg. Co. , 388 U.S. 395, 397-98, 87 S.Ct. 1801, 1802-03, 18 L.Ed.2d 1270 (1967) (labelling as 'broad' a clause requiring arbitration of '[a]ny controversy or claim arising out of or relating to this Agreement'); Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc. , 138 F.3d 160, 164-65 (5th Cir.1998) (holding that when parties agree to an arbitration clause governing '[a]ny dispute ... arising out of or in connection with or relating to this Agreement,' they 'intend the clause to reach all aspects of the relationship.'). Pennzoil Exploration & Prod. Co., v. Ramco Energy, Ltd. , 139 F.3d 1061, 1067 (5th Cir.1998).
Rain CII Carbon LLC v. ConocoPhillips Co. , 12-203, pp. 10-11 (La. App. 4 Cir. 10/24/12), 105 So.3d 757, 764, writ denied , 12-2496 (La. 1/18/13), 107 So.3d 631. Moreover, both the federal and state jurisprudence hold that any doubt as to whether a controversy is arbitrable should be resolved in favor of arbitration. J. Caldarera & Co. v. Louisiana Stadium & Exposition Dist. , 98-294, p. 4 (La. App. 5 Cir. 12/16/98), 725 So.2d 549, 551.
A review of the record reveals that Core filed a motion to dismiss based on the purported settlement of the claims in arbitration. As evidence, Core submitted the GIA and settlement documents. The GIA was incidental to the bonded subcontract. In addition, the Settlement Agreement arose out of the alleged breach of the subcontract claims. In his decision, the arbitrator determined that the documents at issue were "ancillary to the issues related to the subcontract;" therefore, he found that he could review and rely on the documents when ruling on the motion to dismiss.
We agree. The arbitration agreement was broad enough to encompass the consideration of the settlement dispute, as well as the related documents. Therefore, we do not find that the arbitrator exceeded his authority when considering and ruling on these documents in connection with the motion to dismiss.[3] Accordingly, SPA has not met its burden of demonstrating that these issues were beyond the scope of arbitration as contemplated by the arbitration agreement.[4]
Second, concerning the arbitrator's finding that a settlement existed between *335 the parties, the issue turns on whether the arbitrator correctly interpreted the GIA. There is no dispute that USSIC entered into a settlement with Core on SPA's behalf. The relevant portions of the GIA are as follows:
IV. ASSIGNMENT
A. As security for all of the provisions of this Agreement and any other indebtedness or liabilities of the Principal and Indemnitor to the Surety, whenever and however incurred, the Principal and Indemnitor do hereby assign, transfer, pledge, convey and set-over to the Surety the property, rights, and entitlements, and any proceeds thereof, whether such property, rights, entitlements or proceeds shall be now owned or hereafter acquired, described herein below:
...
6. All right, title and interest of any Principal or Indemnitor in and to any causes of action, claims, demands, or actions of whatsoever kind or nature which any Principal may have or acquire against any party to any Contract, or causes of action, claims, demands, or actions of whatsoever kind or nature arising out of or connected with any Contract, including but not limited to, actions against any owner, obligee, design professional, subcontractor, supplier, laborer, material man or any other person or entity performing or providing labor, materials or services in connection with any work called for in connection with any Contract.
...
VI. ATTORNEY IN FACT
The Principal and Indemnitor hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of such Principal and Indemnitor assigned, transferred and set over to the Surety in this agreement, and in the name of such Principal and Indemnitor to make execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect to the Surety under all other provisions of this agreement.
...
IX. SETTLEMENTS
The Surety shall have the right, in its sole and absolute discretion, to adjust, settle, prosecute, defend, compromise or appeal any claim, demand, suit, award or judgment on or in connection with any Bond or Bonded Contract.
In his decision, the arbitrator noted that SPA signed the GIA. The GIA clearly gave USSIC the right to enter into settlement agreements related to the bonded contract. The arbitrator further noted that SPA gave USSIC an irrevocable power of attorney and assignment of rights. Accordingly, he found that a settlement between the parties existed and dismissed the arbitration.
Considering that the plain terms of the GIA support the arbitrator's conclusion, there was no manifest disregard of the law that would provide grounds for reversal. Accordingly, the arbitrator did not err in acknowledging the existence of a settlement and dismissing the arbitration. Moreover, errors of fact or law do not invalidate a fair and honest arbitration award. St. Tammany Manor, Inc. v. Spartan Bldg. Corp. , 509 So.2d 424, 427 (La. 1987).
CONCLUSION
After a careful review of the record, we find SPA failed to sustain its burden of establishing jurisprudential or statutory grounds to vacate or modify the arbitration award, pursuant to La. R.S. 9:4210 or *336 4211. There is no evidence to indicate that the proceedings were fundamentally unfair or the arbitrator exceeded his authority. For these reasons, the judgment of the trial court confirming the arbitration award and dismissing the lawsuit is affirmed.
AFFIRMED
JENKINS, J., CONCURS IN THE RESULT

This Court has made it clear that due process violations require a reviewing court to vacate the award. Johnson v. 1425 Dauphine, L.L.C. , 10-793, p. 10 (La. App. 4 Cir. 12/1/10), 52 So.3d 962, 968-69. However, the four grounds which require a reviewing court to vacate an arbitrator's award are broad in scope and provide sufficient leeway to correct fundamental due process violations. Pittman Constr. Co., Inc. v. Pittman , 96-1079, 96-1498, p. 13 (La. App. 4 Cir. 3/12/97), 691 So.2d 268, 274.

While these documents did not specifically contain an arbitration provision, Section XX of the GIA provided:
The Principal [SPA] and Indemnitor hereby consent to enforcement of this Agreement and submit themselves to personal jurisdiction in any and all jurisdictions in which (a) the Surety may sustain or pay any loss for which the Principal and Indemnitor may be liable; (b) the Surety may be sued or be subject to suit or arbitration as a consequence of having issued any Bond on behalf of the Principal; (c) any construction project may be located which is the subject of any Bonded Contract; and/or (d) any assets of any Principal or Indemnitor may be located.

Furthermore, SPA has not demonstrated that the arbitrator awarded on a matter not submitted. Rather, the dismissal of the arbitration directly related to the matters submitted.